UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CHRISTOPHER P. MORRA and<br>TRACY A. MORRA, | *<br>*<br>* | |
| Plaintiffs, | *<br>* | |
| v. | *<br>* | Civil Action No. 10-11413-JLT |
| JAMES CASEY, | *<br>*<br>* | |
| Defendant. | * | |

MEMORANDUM AND ORDER

August 15, 2013

TAURO, J.

On the eve of trial, the parties have presented the court with two substantive motions for resolution. The first is a Motion to Intervene [#122] brought by Praetorian Insurance Company ("Praetorian"). The second is a Partial Motion to Dismiss [#132] by Defendant James Casey.

In brief, Plaintiffs Christopher Morra and Tracy Morra initiated this action to recover damages from Casey, a Rehoboth Police Department patrol officer, for allegedly running an unauthorized check on Mr. Morra's license plate. The check returned statutorily protected personal information on both Tracy and Christopher Morra. The Morras allege that Casey acted without any legitimate law enforcement or criminal justice purpose. They bring claims against him for violation of the Massachusetts Criminal Offender Record Information System Act[1] ("CORI") and the federal Driver's Privacy Protection Act.[2] Casey denies the allegations and claims that he

---

[1] Mass. Gen. Laws ch. 6, § 172.

[2] 18 U.S.C. § 2722.

1

acted with a legitimate law enforcement purpose.

When the Morras initiated their lawsuit, Casey sought defense and indemnification from the Town of Rehoboth. The town's insurer, Redland Insurance Company, declined to defend or indemnify him. Praetorian, Redland's corporate successor-in-interest, seeks to intervene to propose special verdict questions asking the jury to differentiate between different elements of the claims and damages. Praetorian asserts that this will facilitate post-judgment determination of the rights of the parties.

Eight days before trial, Casey moved to dismiss Count I of the Morras' complaint, which alleges a violation of the CORI statute, on the ground that the Morras had filed outside the statute of limitations. Casey asserts that the court should construe the CORI statute as a penal statute governed by a one-year, rather than a three-year, statute of limitations.

I.   Praetorian's Motion to Intervene [#122]

Praetorian asks to intervene as of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, permissively under Rule 24(b)(2). A party seeking to intervene as of right must demonstrate that: "(i) its motion is timely; (ii) it has an interest relating to the property or transaction that forms the foundation of the ongoing action; (iii) the disposition of the action threatens to impair or impede its ability to protect this interest; and (iv) no existing party adequately represents its interest."[3]

Casey argues that Praetorian's motion is untimely. But "[t]here is no bright-line rule delineating when a motion to intervene is or is not timeous," and the court must make this

---

[3] Ungar v. Arafat, 634 F.3d 46, 50 (1st Cir. 2011).

determination by examining "the totality of the relevant circumstances."[4] Although Praetorian has certainly known of this suit for a long time and could have intervened sooner, it seeks only a very limited role. Allowing Praetorian to propose special verdict questions does not change the nature of the case or necessitate additional discovery, and it will not delay the trial. Consequently, the court finds the motion timely.

But this does not end the matter. Although timely, Praetorian's motion does not assert an interest sufficient to justify intervention as of right under Rule 24(a)(2). An interest "must bear a sufficiently close relationship to the dispute between the original litigants."[5] It may not be "too contingent or speculative."[6] Praetorian asserts an interest in determining with greater precision the damages, if any, assessed against Casey for which it may be liable, even though it has refused to provide defense and claims to have no obligation to defend or indemnify Casey. But determinations of coverage under the town's insurance policy are not directly related to the subject matter of this lawsuit, namely, whether Casey is liable to the Morras for running Mr. Morra's license plate.[7] This attenuated interest does not support intervention as a matter of right.

---

[4] Langone v. Flint Ink N. Am. Corp., 231 F.R.D. 114, 117 (D. Mass. 2005) (quoting Banco Popular de Puerto Rico v. Greenblatt, 964 F.2d 1227, 1230 (1st Cir. 1992) (listing the factors a court must consider in evaluating timeliness).

[5] Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 638 (1st Cir. 1989) (internal quotation marks and citations omitted).

[6] Ungar, 634 at 51-52.

[7] Travelers Indem. Co., 884 F.2d at 640 ("The problem with the second potential interest – that there is no coverage or that whatever coverage exists has been waived – is that it is not related to the subject matter of the action between the [parties]. This lawsuit involves the apportionment of tort liability, not the respective rights and obligations of an insured and his insurers under their insurance policy.").

Nevertheless, the court may allow Praetorian to intervene under Rule 24(b)(2).[8] That rule allows permissive intervention on a timely motion where the intervener "has a claim or defense that shares with the main action a common question of law or fact."[9] The court has "broad discretion" in deciding whether to allow permissive intervention.[10] Although Praetorian's interest in establishing Casey's potential liability with specificity are not sufficiently direct to support intervention as of right, it certainly relates to the subject matter of this case. If Praetorian later establishes that it must indemnify Casey, all or in part, the jury's apportionment of damages may be relevant. Accordingly, the court allows Praetorian to intervene pursuant to Rule 24(b)(2).[11]

II.    Casey's Motion to Dismiss [#132][12]

Casey asks that the court dismiss Count I of the complaint, for violation of the CORI statute, on the ground that the Morras failed to file their complaint within the statute of limitations period. He argues that the court should construe the CORI statute as a penal statute. This would

---

[8] The Town of Rehoboth attended the hearing on August 14, 2013, and subsequently made an oral motion to intervene. The court allowed that motion under Rule 24(b)(2) for reasons similar to those outlined here with regard to Praetorian.

[9] Fed. R. Civ. P. 24(b)(2).

[10] Travelers Indem. Co., 884 F.2d at 641; see Daggett v. Comm'n on Governmental Ethics & Election Practices, 172 F.3d 104, 112-13 (1st Cir. 1999).

[11] The court notes that Praetorian's motion to intervene does not actually propose special verdict questions, and the court takes no position as to whether it would allow or deny any such request.

[12] Casey has filed two answers to the complaint in this case, one on March 11, 2011, and a second on June 29, 2011. Accordingly, the court construes his motion to dismiss as a motion for judgment on the pleadings under Rule 12(c). In doing so, the court considers only those matters presented in the pleadings.

impose a one-year, rather than a three-year, statute of limitations.[13]

It is clear from the complaint, and Casey does not dispute, that if the Morras' claim is governed by a three-year statute of limitations, then the action is timely. If, on the other hand, the claim is subject to a one-year statute of limitations, this action may have been untimely. Accordingly, this court must consider the proper construction of the CORI statute. As another judge of this court recently noted, "Defendant does not cite, and the Court has not found, any cases that have interpreted Mass. Gen. Laws ch. 6, § 177 [the private right of action at issue] as a penal statute."[14]

Courts apply a two-part framework to determine whether a statute is penal. First, the court must determine whether the legislature "explicitly or implicitly intended to denominate the statute a civil remedy or criminal penalty."[15] If the legislature intended a criminal penalty, that ends the inquiry. If not, the court must consider "whether the statutory scheme is so punitive either in purpose or effect as to negate [the State's] intention to deem it civil. Because we ordinarily defer to the legislature's stated intent, only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty."[16]

Here, the legislature has provided some evidence in the text and structure of the statute

---

[13] See Mass. Gen. Law ch. 260, § 5.

[14] Roggio v. City of Gardner, Civ. A. No. 10-40076-FDS, 2013 WL 1947033, at *8 (D. Mass. May 9, 2013).

[15] Commonwealth v. Cory, 911 N.E.2d 187, 192 (Mass. 2009); see Smith v. Doe, 538 U.S. 84, 92 (2003).

[16] Smith, 538 U.S. at 92 (internal quotation marks and citations omitted).

suggesting an intent to create a civil remedy.[17] Section 177 is entitled "Violations; civil liability,"[18] suggesting that the legislature intended the private right of action as a civil remedy. Furthermore, the very next section, addressing the same basic conduct, is entitled "Violations; punishment."[19] Together, these sections indicate the legislature's intent to create a parallel system of enforcement for the protection of private information: a private civil remedy in § 177 and a criminal penalty in § 178. The court therefore concludes that the legislature intended § 177 as a civil remedy.

In light of this determination, the court must consider whether the statute is so punitive that it effectively transforms this intended civil remedy into a criminal penalty. The court may consider as "useful guideposts" whether the statute: "has been regarded in our history and traditions as a punishment; imposes an affirmative disability or restraint; promotes the traditional aims of punishment; has rational connection to a nonpunitive purpose; or is excessive with respect to this purpose."[20]

Section 177 provides that, in cases of willful violations, the violator shall "be liable for exemplary damages of not less than one hundred and not more than one thousand dollars for each violation."[21] This does not resemble traditional punishment, which may include physical restraint,

---

[17] Id.

[18] Mass. Gen. Laws ch. 6, § 177.

[19] Mass. Gen. Laws ch. 6, § 178.

[20] Smith, 538 U.S. at 97.

[21] Mass. Gen. Laws ch. 6, § 177.

and it has less impact than penalties directly affecting the violator's employment.[22] The statute has a rational connection to a nonpunitive purpose, specifically, protecting sensitive private information. The legislature may reasonably have considered that some plaintiffs would struggle to establish actual damages and could consequently have decided to impose exemplary damages to further statutory compliance.[22] The court cannot conclude that damages of $100 to $1,000 are excessive in relation to this purpose.

Because the court considers the CORI statute a civil remedy, the one-year statute of limitations established by Mass. Gen. Laws ch. 260, § 5 does not apply. Consequently, the Morras' claim is timely.

ORDER

For the reasons explained above, this court hereby orders that:

1. Praetorian's Motion to Intervene [#122] is ALLOWED.

2. Defendant's Motion to Dismiss [#132] is DENIED.

IT IS SO ORDERED.

/s/ Joseph L. Tauro
United States District Judge

---

[22] Smith, 538 U.S. at 100 (noting that the harsh sanction of occupational debarment was considered nonpunitive).

[22] See Globe Newspaper Co. v. Fenton, 819 F. Supp. 89, 96 (D. Mass. 1993) ("Broadly stated, the objectives of the Massachusetts privacy scheme are both rational and important to the Commonwealth.").